UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

PAUL KNUTSON,                                    Civil No. 10-357 (PJS/LIB)

       Plaintiff,

  v.                                             **REPORT AND RECOMMENDATION**

CAL LUDEMAN, DENNIS BENSON,
DAVID PRESCOTT, Dr. ANN LaVALLEY
WOODS, and JANINE HEBERT,

       Defendants.

_____

     Paul Knutson, Minnesota Sex Offender Program, 1111 Highway 73, Moose Lake, Minnesota, 55767-9452, Plaintiff, <u>pro</u> <u>se</u>.

     Jan M. Haapala, Assistant Minnesota Attorney General, 445 Minnesota Street, Suite 900, St. Paul, Minnesota, 55101-2127 for Defendants.

_____

LEO I. BRISBOIS, United States Magistrate Judge

     The above-named Plaintiff, Paul Knutson, is a civilly committed detainee at the Minnesota Sex Offender Program, ("MSOP"), in Moose Lake, Minnesota. He commenced this action by filing a complaint seeking relief under 42 U.S.C. § 1983. (Docket No. 1.) Defendants have filed a motion seeking to dismiss Plaintiff's complaint, pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(5) and 12(b)(6). (Docket No. 8.) The motion has been fully briefed, and the matter has been referred to the undersigned Magistrate Judge for a report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1.

     For the reasons discussed below, the Court will recommend that Defendants' motion to dismiss be granted in part, and denied in part.

## I. BACKGROUND

Plaintiff was civilly committed to the MSOP in 2005, after a Minnesota state district court found him to be a "sexually dangerous person," and a "sexual psychopathic personality" under Minnesota law. See In re Civil Commitment of Knutson, No. A05-1204 (Minn.App. 2005), 2005 WL 3159930 (unpublished opinion).[1]

---

[1] The Minnesota Court of Appeals has described the factual basis for Plaintiff's commitment as follows:

"Appellant Paul John Knutson is a 27-year-old male with a history of criminal sexual conduct and other antisocial behavior. In October 1990, at the age of 12, appellant committed his first reported sexual assault by inappropriately touching the breasts and buttocks of a 13-year-old female despite her protests. Appellant was charged with and admitted to fourth-degree criminal sexual assault and was placed on indefinite probation.

At age 15, appellant committed his second reported sexual assault. His victim was his seven-year-old male step-cousin. Appellant invited the boy to play Nintendo and then forced him to perform oral sex. Despite appellant's threats, the boy reported the assault, and appellant was convicted of second-degree sexual assault and adjudicated delinquent.

Appellant committed three additional sexual assaults in 1997. In November, he forced a 14-year-old female to perform oral sex. Afterwards, appellant threatened the girl. In early December, appellant raped another 14-year-old female in a car. Appellant threatened to kill this girl if she told anyone. Two weeks later, appellant sexually assaulted a 12-year-old female in the bathroom of her home. After the assault, appellant threatened to kill her and her brother. Appellant pleaded guilty to charges of third-degree sexual assault for the oral sex incident and fourth-degree sexual assault for the incident with the 12 year old; he was not prosecuted for the rape. Appellant received probation as punishment for both assaults.

After stays in various treatment facilities, appellant was incarcerated in 1999 because he violated the terms of his probation by physically assaulting his fiancée. Before appellant was released from prison, he was identified as a level III sex offender. Appellant was then placed in a series of halfway houses. However, he absconded from each placement. As a result, appellant returned to prison in 2002.

In the present case, Plaintiff is attempting to sue five state employees who work with the MSOP. The five named Defendants are (1) Cal Ludeman, Commissioner of Department of Human Services; (2) Dennis Benson, Chief Executive Officer of the MSOP; (3) David Prescott, MSOP Clinical Site Director; (4) Dr. Ann LaValley-Wood, Assistant Clinical Director at the MSOP; and (5) Jannine Hebert, who is identified as "the Executive Clinical Director and... the supervisor of Defendants Prescott and LaValley Wood." (Complaint, [Docket No. 1], p. 4, § IV.)[2] Plaintiff claims that Defendants are violating his federal constitutional rights because (a) they have established and applied a policy that prohibits Plaintiff's minor daughter from visiting him at the MSOP, and (b) they have established a policy that requires all prospective visitors at the MSOP to complete and submit a "visiting application form."

According to the complaint, in December 2009, Defendant Prescott stated to Plaintiff that –

> "It was brought to the Clinical Team's attention that you had a visit with your minor daughter recently, which I understand had been previously approved. As MSOP is moving toward a more streamlined visiting approval system, we are considering multiple pertinent factors, such as a client's progress in

---

> Pending appellant's December 24, 2004, release from the Minnesota Department of Corrections, officials in Swift County petitioned for appellant's civil commitment. The county alleged that appellant is a sexually dangerous person (SDP) under Minn.Stat. § 253B.02, subd. 18c(a) (2004), and a sexual psychopathic personality (SPP) under Minn.Stat. § 253B.02, subd. 18b (2004). The district court found that appellant met the standards under both provisions and ordered his civil commitment."

Knutson, 2005 WL 3159930 at *1.

[2] There are some discrepancies in the record with regard to the spelling of the names of some of the Defendants. The Court will use the spellings shown in Defendants' own submissions.

treatment, the client's offending history (for example did the client offend against minors), the client's accountability for their offending including the completion of a non-deceptive polygraph, etc. With these factors in mind, further review of your situation occurred, and as a result the approval you received to visit with a minor has been rescinded. You are encouraged to continue treatment work in a manner that this may be a possibility in the future."

(Complaint, p. 6, § VI, ¶ 3.)[3]

Plaintiff alleges that he has not had an opportunity to visit with his daughter since December 2009, even though he allegedly is not subject to any conditions of parole or supervised release that would restrict such visits. (Id., p. 11, § VI, ¶ 15.) Plaintiff also alleges that the opportunity to "visit with his daughter and embrace her from time to time during the time he is detained for a prolonged period of time is a matter of great importance to him." (Id., p. 6, § VI, ¶ 4.) It is further alleged that Defendants are "subjecting plaintiff and his family to harassment and degradation." (Id., p. 11, § VI, ¶ 15.)

More generally, Plaintiff alleges that –

"Defendants also force potential visitors of plaintiff to full [sic] out visiting forms before they are allowed to visit. If they do not pass the background check, the potential visitor is banned from visiting plaintiff."

(Id., p. 9, § VI, ¶ 10.)

It is also alleged in the complaint that "Defendants have not provided any type of a review of decisions to revoke or suspend visitation privileges." (Id., p. 10, § VI, ¶ 12.) The

---

[3] Plaintiff also alleges that --

"The following was recently documented by defendant Prescott on December 31st, 2009: 'I don't recall providing special approval for anyone. In fact, we have a policy in place. I will forward this to Tom Lundquist. Thanks.'"

(Complaint, p. 6, § VI, ¶ 4, [emphasis in the original].) The intended significance of this allegation is not readily apparent to the Court, nor has it been explained by Plaintiff.

Court understands this to mean that (1) MSOP has not afforded Plaintiff any opportunity to challenge the specific ruling that prohibits his daughter from visiting him, and (2) in general, MSOP does not provide any procedure for challenging any ruling that prohibits a particular individual from visiting a particular MSOP detainee.

Plaintiff has presented no additional factual allegations in his complaint. The complaint includes several pages of legal arguments and conclusions, but no other facts have been pled.

Based on the minimal facts alleged in the complaint, Plaintiff is seeking relief under 42 U.S.C. § 1983. He claims that Defendants are violating numerous rights that allegedly are guaranteed to him by various provisions in the federal Constitution. He specifically claims that –

(1) Defendants are violating the First Amendment by preventing him from associating with his daughter.

(2) Defendants are violating the Eighth Amendment by subjecting him to "cruel and unusual punishment."

(3) Defendants are violating his Fourteenth Amendment right to procedural due process by depriving him of a protected liberty interest – namely, his interest in visiting his daughter – without affording him any procedural rights by which he can contest the deprivation of said liberty interest;

(4) Defendants are violating his Fourteenth Amendment right to substantive due process by arbitrarily depriving him of a fundamental right – namely, the opportunity to have visits with his daughter.

(5) Defendants are violating his Fourteenth Amendment right to equal protection by

prohibiting him from having visits with his daughter.

Giving Plaintiff's complaint the benefit of a liberal construction, it appears that he might also be attempting to bring a separate constitutional claim based on the alleged MSOP policy that requires visitors generally to complete and submit a visiting application form.  Although it is by no means clear that Plaintiff is actually attempting to advance such a claim, the Court will presume such a claim has been asserted and discuss it more fully below.

Plaintiff is seeking a declaratory judgment that would "declar[e] the constitutional rights to which plaintiff is entitled," as well as an injunction that would "requir[e] Defendants to provide all Constitutional rights to which Plaintiff is entitled."  (Id., p. 12, § V.A. and § V.B.)  In addition, Plaintiff is seeking compensatory and punitive damages from Defendants. (Id., p. 12, § V.C.)

## II.  DEFENDANTS' MOTION TO DISMISS

Defendants' current motion to dismiss Plaintiff's complaint is grounded on Rule 12(b).  Defendants specifically contend that (a) some of Plaintiff's claims must be dismissed pursuant to Rule 12(b)(1), because there is a lack of federal subject matter jurisdiction as to those claims; (b) Plaintiff's claims against Defendant Jannine Hebert must be dismissed pursuant to Rule 12(b)(5), because Plaintiff has not effected service of process on that particular Defendant; and (c) all of Plaintiff's remaining claims must be dismissed pursuant to Rule 12(b)(6), because Plaintiff's complaint fails to state a cause of action on which relief can be granted.

Defendants' Rule 12(b)(1) motion is easily resolvable.  Defendants contend that the Court lacks subject matter jurisdiction over Plaintiff's § 1983 claims for money damages

brought against Defendants in their official capacities because the Eleventh Amendment generally prohibits § 1983 claimants from bringing such claims in federal court.  <u>See</u> <u>Arizonans for Official English v. Arizona</u>, 520 U.S. 43, 69, n. 24 (1997) ("[s]tate officers in their official capacities, like States themselves, are not amenable to suit for damages under § 1983").  Plaintiff does not dispute this principle.  (<u>See</u> Plaintiff's Response to Defendants' Motion To Dismiss, [Docket No. 17], [hereafter "Plaintiff's Memorandum"], p. 5 ("Plaintiff agrees that § 1983 plaintiffs cannot seek monetary damages against state officials in their official capacity").)

The Court agrees with Defendants on this point.  Therefore, to the extent that Plaintiff is seeking money damages from any Defendant in his or her official capacity, the Court will recommend that Plaintiff's claims be summarily dismissed for lack of subject matter jurisdiction.[4]

Defendants' motion to dismiss Plaintiff's remaining claims pursuant to Rule 12(b)(6) requires greater analysis.[5]

## III. STANDARD OF REVIEW

---

[4]  As Plaintiff has correctly noted, the Eleventh Amendment does <u>not</u> bar a § 1983 claimant from suing a state actor in his or her official capacity for purely prospective relief. <u>Serna v. Goodno</u>, 567 F.3d 944, 952 (8th Cir. 2009) ("the Eleventh Amendment bars damages claims against the states, but generally does not bar claims for prospective injunctive relief against public officials in their official capacities"), <u>cert</u>. <u>denied</u>, 130 S.Ct. 465 (2009).  Therefore, to the extent that Plaintiff is attempting to sue any of the current Defendants in his or her official capacity for <u>injunctive relief</u>, (as opposed to money damages), his claims will not be dismissed on the basis of an alleged lack of subject matter jurisdiction.

[5]  The motion to dismiss Plaintiff's claims against Defendant Jannine Hebert pursuant to Rule 12(b)(5) need not be reached, because the Court finds that those claims should be dismissed pursuant to Rule 12(b)(6).

A civil complaint will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), if it fails to state a cause of action on which relief can be granted. To state a cause of action that will survive a Rule 12(b)(6) motion, a complaint must allege a set of historical facts, which, if proven true, would entitle the plaintiff to some legal redress against the named defendant(s) under some established legal theory. Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980) ("the complaint must allege facts, which if true, state a claim as a matter of law").

In deciding a Rule 12(b)(6) motion to dismiss, a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).

A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999).

Pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam). However, even a pro se complaint must allege facts, and not just bare, unsupported, legal conclusions. Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) ("[a]lthough it is to be liberally construed, a pro se complaint must contain specific facts supporting its conclusions"); Frey

v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995) ("[a]t the very least... the complaint must contain facts which state a claim as a matter of law and must not be conclusory") (emphasis added).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." Id. at 555.

"[I]n fulfilling its duty to liberally construe a civil-rights pleading," a court is not required to "divine the litigant's intent and create claims that are not clearly raised," nor is the court required to "read or construct an argument into a civil-rights pleading." Bediako v. Stein Mart, Inc., 354 F.3d 835, 840 (8th Cir. 2004). Federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." Stone v. Harry, 364 F.3d 912, 915 (8th Cir. 2004).

To successfully plead a § 1983 civil rights cause of action, as Plaintiff is attempting to do here, a complainant must allege a set of historical facts, which, if proven true, would demonstrate that the named defendant(s) violated the complainant's federal constitutional rights while acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). Furthermore, "[l]iability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights" protected by the Constitution. Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990); Speed v. Ramsey County, 954 F.Supp. 1392, 1397 (D.Minn. 1997) (same). In other words, civil rights claimants must plead facts showing each defendant's personal involvement in alleged constitutional wrongdoing. Ellis v. Norris, 179

F.3d 1078, 1079 (8th Cir. 1999). <u>See also</u> <u>Beck v. LaFleur</u>, 257 F.3d 764, 766 (8th Cir. 2001) (upholding summary dismissal of civil rights claims, because plaintiff's complaint "failed to allege sufficient personal involvement by any of defendants to support such a claim"). In sum, when a plaintiff seeks relief under § 1983, his complaint must set forth specific factual allegations showing what each named defendant allegedly did, or failed to do, while acting under color of state law, which purportedly violated the plaintiff's federal constitutional rights.

## IV. DISCUSSION

### A. Claims Against Defendants Cal Ludeman and Jannine Hebert

Defendants contend that Plaintiff has failed to plead an actionable § 1983 claim against Cal R. Ludeman and Jannine Hebert, because Plaintiff's complaint does not include any factual allegations describing any specific acts or omissions by either of those two Defendants that could be viewed as a violation of Plaintiff's constitutional rights. That argument is well-taken.

Plaintiff has alleged that Defendant Ludeman is the Commissioner of the Minnesota Department of Human Services, and that he "oversees the policies, procedures, and practices at MSOP." (Complaint, p. 4, § IV, ¶ 5(a).) Liberally construed, the complaint also appears to allege in a conclusory fashion that Defendant Ludeman has a general duty to protect and treat patients who are committed to the MSOP. (<u>Id</u>.) Similarly, Defendant Hebert is generally alleged to be the "Executive Clinical Director" of the MSOP, and the supervisor of Defendants David Prescott and Ann LaValley-Wood. The complaint does not contain any other specific factual allegations pertaining to either Defendant Ludeman or Defendant Hebert. Indeed, neither of these Defendants is ever mentioned, or even alluded

10

to, in the "Statement of Claims" section of Plaintiff's complaint. There certainly are no factual allegations describing anything that either of those Defendants personally did, or failed to do, that violated the federal Constitution.

Defendants have suggested in their motion papers that Plaintiff might be claiming that Defendants Ludeman and Hebert should be held <u>vicariously</u> liable for some alleged constitutional wrongdoing by their subordinates, (presumably Defendants Prescott and LaValley-Wood). However, if Plaintiff were deemed to be seeking to hold Ludeman and Hebert vicariously liable for allegedly unconstitutional misconduct by their subordinates, that effort would be rejected, because the doctrine of <u>respondeat superior</u> is not applicable to § 1983 claims. <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 694 (1978). <u>See also</u> <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009) ("[i]n a § 1983 suit or a <u>Bivens</u> action... masters do not answer for the torts of their servants"); <u>Nelson v. Correctional Medical Services</u>, 583 F.3d 522, 535 (8th Cir. 2009) ("[i]n a § 1983 case an official 'is only liable for his... own misconduct' and is not 'accountable for the misdeeds of [his] agents' under a theory such as respondeat superior or supervisor liability") (quoting <u>Iqbal</u>, 129 S.Ct. at 1948-49).

In any event, Plaintiff disavows any reliance on <u>respondeat superior</u>, and contends that he is trying to sue Defendants Ludeman and Hebert for what they actually did, or failed to do, as supervisors. He argues that these two Defendants are being sued because they allegedly "knew about and facilitated their subordinates' violations of [Plaintiff's] constitutional rights because they directed the subordinates to apply the policies and deny the visitation between [Plaintiff] and his daughter." (Plaintiff's Memorandum, p. 6.) This argument, however, is based on conclusory assertions not supported by any factual

allegations in the complaint.

Once more, there are no factual allegations in the complaint that describe any specific act or omission that is directly attributable to Defendant Ludeman, personally, or to Defendant Hebert, personally. At most, Plaintiff has alleged only that those two Defendants were responsible for supervising other parties who allegedly personally violated Plaintiff's constitutional rights. Such allegations might be adequate to state a cause of action if respondeat superior were applicable here, but as noted above, the doctrine of respondeat superior does not apply to § 1983 claims.

Therefore, the Court finds that Plaintiff has not properly pleaded any actionable § 1983 claim against Defendant Cal Ludeman or Defendant Jannine Hebert. The Court will recommend that these two Defendants be dismissed from this action altogether.

B. Visiting Application Forms

Defendants further contend that Plaintiff's allegations regarding the MSOP visiting application forms do not support any actionable § 1983 claim. Plaintiff alleges that he "is being punished in order to see his visitors, through defendants forcing his visitors or potential visitors to complete visiting applications before they are allowed to visit." (Complaint, p. 5, § VI, ¶ 2.) It is further alleged that --

> "Defendants also force potential visitors of plaintiff to full [sic] out visiting forms before they are allowed to visit. If they do not pass the background check, the potential visitor is banned from visiting plaintiff. The visiting restrictions placed upon plaintiff are punitive and for no other purpose are to punish him, [sic] violating his due process rights under the Fourteenth Amendment of the United States Constitution."

(Id., p. 9, § VI, ¶ 10.)

As noted above, it is not entirely clear that Plaintiff actually intended to plead a

separate cause of action based on any allegations pertaining to the visiting application forms. However, if that was indeed his intent, he has failed. As Defendants have correctly pointed out, Plaintiff has not pled an actionable § 1983 claim based on the alleged policy regarding the visiting application forms, because he has not shown that he has suffered, or is likely to suffer, any actual injury as a result of that policy.

"Article III, § 2, of the United States Constitution... limits the subject matter jurisdiction of federal courts to actual cases and controversies." McClain v. American Economy Ins. Co., 424 F.3d 728, 731 (8th Cir. 2005). "'[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury-in-fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" Id., quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000).

Plaintiff's current putative claim pertaining to the visiting application forms policy does not present a justiciable case or controversy, because it does not satisfy the "injury-in-fact" requirement. Plaintiff has not identified, through the inclusion of factual allegations in his complaint, any "actual or imminent" injury caused by Defendants' alleged visiting application forms requirement. Plaintiff has not named a single individual who has been denied an opportunity to visit with him as a direct result of the alleged policy; nor has he named a single individual who is likely to be denied the opportunity to visit him because of the policy. The complaint presents only a conclusory assertion that the policy somehow constitutes a form of "punishment." However, Plaintiff has not pleaded any specific facts showing that he actually has suffered, or is likely to suffer, any specific harm (or

"punishment"), as a result of the policy at issue.

Plaintiff may believe that the visiting application forms policy has somehow affected his ability to visit with his daughter, but nothing in the allegations of the complaint supports that notion. Plaintiff's complaint does not identify any meaningful connection between the visiting application forms policy, and the separate policy that allegedly precludes him from receiving visits from minors, including his daughter. Nothing in the complaint suggests that abolishing the visiting application forms policy would allow his daughter to visit him. Therefore, Plaintiff has not adequately alleged that the visiting application forms policy per se, (as opposed to the alleged policy restricting visits from minors), is a cause of any past or potential injury.

In sum, Plaintiff has alleged no facts showing that Defendants' alleged policy of requiring visitors to fill out application forms has caused, or will cause, any cognizable injury to his substantive legal rights. Thus, the Court concludes that Plaintiff's allegations pertaining to the visiting application forms policy do not present a justiciable case or controversy, and to the extent the Plaintiff may have attempted to plead a claim involving the visiting application forms policy, the Court will recommend that it be dismissed entirely.

C. Denial of Visits by Plaintiff's Daughter

The remaining and fundamental claim alleged in Plaintiff's complaint is that Defendants Dennis Benson, David Prescott and Dr. Ann LaValley-Wood have violated Plaintiff's constitutional rights by establishing and applying a policy that precludes Plaintiff from having in-person visits with his minor daughter. Based on the limited factual allegations in the complaint, the Court understands that sometime in 2008 or 2009, Defendant Benson revised the visitation policies at the MSOP. Those revisions created

14

new restrictions on the visitation opportunities available to MSOP patients. (Complaint, p. 5, § VI, ¶ 1.) As far as the Court can tell, Defendant Benson allegedly established the revised policy, and Defendants Prescott and LaValley-Wood allegedly applied the policy to take away Plaintiff's visits with his minor daughter.

Plaintiff's complaint does not provide a comprehensive explanation of the policy at issue. However, based on the allegations in the complaint, and giving them a liberal construction as is required for pro se pleadings, it can reasonably be inferred that the revised visitation policy authorizes MSOP staff to prevent certain patients from having in-person visits with minors – including a minor who happens to be the patient's own child. That is what allegedly happened to Plaintiff.

Plaintiff claims that he has a constitutional right to have in-person visits with his daughter, which is guaranteed by the First Amendment's freedom-of-association clause, and the Fourteenth Amendment's due process clause.[6] He further claims that Defendants Benson, Prescott and LaValley-Wood are violating his constitutional right to have in-person visits with his daughter by using MSOP's revised visitation policy to prohibit such visits. It

_____

[6] Plaintiff has also cited the Fifth, Eighth and Ninth Amendments in support of his alleged constitutional right to have in-person visits with his minor daughter, but he cannot bring any separate claims based on those Amendments. As Defendants have correctly pointed out, the Fifth Amendment due process clause generally limits only the authority of the <u>federal</u> government, the Eighth Amendment applies only to convicted criminals, (not civilly committed detainees, such as Plaintiff), and the Ninth Amendment creates no rights that are independent of other constitutional rights. <u>See</u> <u>Bell v. Stigers</u>, 937 F.2d 1340, 1343 (8th Cir. 1991) ("protection against cruel and unusual punishment as provided under the Eighth Amendment applies only to convicted prisoners"); <u>Perry v. Lackawanna County Children & Youth Services</u>, 345 Fed.Appx. 723, 726 (3rd Cir. 2009) (unpublished opinion) ("the Ninth Amendment does not independently provide a source of individual constitutional rights"). To the extent that Plaintiff is seeking relief based on the Fifth, Eighth and Ninth Amendments, the Court finds that his claims are effectively subsumed within his Fourteenth Amendment due process claims.

is not clear, however, whether Plaintiff is principally claiming that the revised visitation policy promulgated by Defendant Benson is inherently unconstitutional on its face, that Defendants Prescott and LaValley-Wood have violated the Constitution in the manner they have applied the policy to bar him from receiving visits from his daughter, or both.[7] The Court need not decide at this time whether or not the policy is constitutional on its face, and for purposes of the present motion, it need only decide whether Plaintiff has pleaded a cognizable claim that the MSOP visitation policy is unconstitutional as applied to him. This is the best course to follow, because even if the policy is constitutional on its face, the Court finds that Plaintiff has pleaded a cognizable claim that Defendants violated his constitutional rights in the alleged manner in which they applied the policy in his case.

Plaintiff claims that he has a federal constitutional right to maintain a close relationship with his daughter which cannot be infringed by the State of Minnesota. That right purportedly arises out of the First Amendment's freedom of association clause, as well as the Fourteenth Amendment's due process clause.[8] Defendants candidly acknowledge

---

[7] As the Court understands the complaint, Defendant Benson is being sued because he allegedly established the visitation policy at issue, and he allegedly is responsible for the ongoing use of the policy. Defendants Prescott and LaValley Wood apparently are being sued because of the manner in which they have applied the policy to Plaintiff. Although the complaint is not a model of clarity, it does include the phrase "unconstitutional as applied." (Complaint, p. 8, § VI, ¶ 8.)

[8] Plaintiff cites several decisions of the United States Supreme Court, which generally support his claimed constitutional right to maintain a relationship with his daughter. See e.g., Santosky v. Kramer, 455 U.S. 745, 753 (1982) (acknowledging the "fundamental liberty interest of natural parents in the care, custody, and management of their child"); Quilloin v. Walcott, 434 U.S. 246, 255 (1978) ("[w]e have recognized on numerous occasions that the relationship between parent and child is constitutionally protected"); Prince v. Massachusetts, 321 U.S. 158, 166 (1944) ("[i]t is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder").

that "[g]enerally speaking, parents have a protected liberty interest in having a reasonable opportunity to develop close relations with their children." (Defendants' Memorandum In Support Of Their Motion To Dismiss, [Docket No. 10], p. 13, citing Hodgson v. Minnesota, 497 U.S. 417, 484 (1990) (Kennedy, J., concurring in part and dissenting in part).) However, Defendants also contend that Plaintiff's constitutional right to maintain a close relationship with his daughter is directly affected by his civil commitment. Defendants specifically contend that Plaintiff's right to maintain a relationship with his daughter can be restricted by means of the revised visitation policy described in Plaintiff's complaint.

Defendants urge the Court to reject Plaintiff's challenge to the revised visitation policy, because the policy is constitutionally permissible under "a modified version of the test outlined in Turner v. Safely, 482 U.S. 78 (1987)." (Defendants' Memorandum In Support Of Their Motion To Dismiss, [Docket No. 10], p. 14.) Turner prescribes a four-step test for determining whether a prison regulation should be allowed to trump a prisoner's First Amendment rights.[9]

Defendants argue that the revised MSOP visitation policy cited in Plaintiff's complaint passes constitutional muster under the four-part Turner test. Defendants' Memorandum in support of their present motion offers a comprehensive Turner analysis of the policy at issue, and why they believe it should be upheld. (Defendants' Memorandum In Support of Their Motion To Dismiss, [Docket No. 10], pp. 13-23.)

---

[9] In Ivey v. Mooney, Civil No. 05-2666 (JRT/FLN), 2008 WL 4527792, at *4 (D.Minn. Sept. 30, 2008), the Court found that the First Amendment rights of a civilly committed sex offender should be reviewed under a "modified version" of the Turner test. Although Plaintiff is not a prisoner, he apparently acknowledges that his current claims can properly be analyzed under Turner. (See Plaintiff's Memorandum, p. 13.)

Defendants have also made an effort to show that the revised MSOP visitation policy does not deprive Plaintiff of any substantive due process interest that is protected by the Fourteenth Amendment, or any liberty interest that is entitled to procedural protection under the Fourteenth Amendment. (Id. at pp. 26-29; 31-35.)

Although Defendants' arguments are well-articulated and accompanied by substantial legal authority, those arguments cannot be adopted by the Court at this time because in the context of a Rule 12(b)(6) motion which is now before the Court, the current record and the factual allegations of the complaint therein are all the Court is to consider. As of now, the factual allegations before the Court include simply that (1) MSOP is moving toward a more streamlined visiting approval system; (2) the new policy authorizes MSOP officials to consider multiple pertinent factors, (3) Defendants Prescott and LaValley-Wood decided that Plaintiff should not be allowed to have any more in-person visits with his minor daughter; and (4) if Plaintiff "continue[s] treatment work" he might be able to have in-person visits with his daughter sometime in the future. (Id.) Even if this were enough information to allow the Court to determine whether the policy at issue is constitutional on its face, these factual allegations do not allow the Court to adopt Defendants' arguments that as a matter of law, the policy was applied to Plaintiff in a manner that did not violate his constitutional rights.

It is entirely possible that the visitation decision at issue in this case is well-supported by relevant facts yet to be developed in discovery. Defendants Prescott and LaValley-Wood may ultimately be able to furnish a rational, reasonable, and well-supported explanation for their decision. On the other hand, however, it is also possible that Defendants cannot present such an explanation, because their decision was purely

arbitrary. Based on the current limited record – construing the factual allegations in the pro se complaint liberally and in favor of the Plaintiff – it is impossible to say as a matter of law at this time that the visitation policy was applied reasonably rather than arbitrarily. In sum, even if the policy at issue is constitutional on its face, Plaintiff's complaint cannot be dismissed (in its entirety) pursuant to Rule 12(b)(6), because the Court cannot determine as a matter of law that Plaintiff's constitutional rights were not violated by the manner in which the policy was applied to him. See gen., Dean v. Bowersox, 325 Fed.Appx. 470, 472-73 (8th Cir. 2009) (per curiam) (unpublished opinion) (upholding prison regulation prohibiting sexually explicit and violent publications as constitution on its face, but reversing Rule 12(b)(6) dismissal and remanding "for further consideration of the validity of the regulations as applied to the publications at issue" because the allegations in the pro se complaint, when liberally construed, were sufficient to state a cognizable claim under § 1983).

D.  Qualified Immunity

Defendants have also raised a qualified immunity defense. The Supreme Court has explained that –

> "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"

Pearson v. Callahan, 555 U.S. 223, ___,129 S.Ct. 808, 815 (2009), quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The Supreme Court has approved a two-step process for resolving qualified immunity claims:

> "First, a court must decide whether the facts that a plaintiff has alleged... or shown... make out a violation of a constitutional right....  Second, if the

plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."

Pearson, 555 U.S. at __,129 S.Ct. at 815-16 (citations omitted).

Here, the Court finds that Plaintiff's complaint does allege a violation of his constitutional rights. As discussed in Section C above, Plaintiff alleges that Defendants have violated his constitutional right to maintain close relations with his minor daughter. That right was clearly established as of late 2009, when Defendants allegedly prohibited Plaintiff from having any further in-person visits with his daughter. If Defendants arbitrarily barred Plaintiff from seeing his daughter (as Plaintiff seems to be alleging, see Complaint, p. 8, § VI, ¶ 8), then they arguably violated Plaintiff's clearly established constitutional rights. Based on the complaint alone, as is required for a Rule 12(b)(6) motion, it cannot be determined that Defendants did not act arbitrarily. Therefore, the Court cannot presently conclude that Defendants are entitled to qualified immunity.

It also is worth noting that even if Defendants were entitled to qualified immunity, Plaintiff's lawsuit against them would still continue, because qualified immunity applies only to claims for money damages. Qualified immunity does not preclude civil rights claims for prospective relief – i.e., injunctions or declaratory judgments. Grantham v. Trickey, 21 F.3d 289, 295 (8th Cir. 1994) ("[t]here is no dispute that qualified immunity does not apply to claims for equitable relief"); Bradford v. Missouri Dept. of Corrections, 46 Fed.Appx. 857, 858 (8th Cir. 2002) (unpublished opinion) ("qualified immunity does not shield officials from equitable relief"). In this case, Plaintiff is seeking injunctive relief that would afford him in-person visits with his minor daughter in the future. Therefore, even if Defendants were found to have acted in good faith, causing the monetary damages claims against them to

be dismissed based on qualified immunity, Plaintiff's effort to enjoin Defendants' future conduct would still remain alive.

E. Equal Protection Claim

There is one last matter that needs to be resolved at this time. The Court has found that Plaintiff has stated an actionable § 1983 claim based on his First Amendment right to freedom of association, and his Fourteenth Amendment rights to substantive and procedural due process. It appears that Plaintiff is also attempting to bring a separate claim for relief under the equal protection clause of the Fourteenth Amendment. That claim has not yet been addressed.

Defendants contend that Plaintiff has failed to plead an actionable equal protection claim. The Court agrees.

To state an actionable equal protection claim, a complainant must allege a set of facts showing that the named defendants treated the complainant differently from other similarly situated individuals, based on some prohibited form of discrimination. See Patel v. U.S. Bureau of Prisons, 515 F.3d 807, 815 (8th Cir. 2008) ("In order to establish such an equal protection claim, a prisoner must show that he is treated differently from similarly-situated inmates and that the different treatment is based upon either a suspect classification or a 'fundamental right.'"); Klinger v. Department of Corrections, 31 F.3d 727, 731 (8th Cir. 1994) (to sustain an equal protection claim, plaintiff must show that he belongs to a group that has been treated less favorably than others who are "similarly situated"), cert. denied, 513 U.S. 1185 (1995).

Here, Plaintiff has presented only a conclusory equal protection claim. (Complaint, p. 11, § VI, ¶ 14.) He has not alleged any facts showing that he has been treated differently

from other similarly situated individuals based on some forbidden form of discrimination. Plaintiff's memorandum in response to Defendants' motion to dismiss includes a brief general discussion of equal protection jurisprudence, (Plaintiff's Memorandum, p. 22), but Plaintiff still has made no effort to show factually that Defendants have treated him differently from other similarly situated detainees at the MSOP. Thus, the Court concludes that Plaintiff's complaint fails to state an actionable equal protection claim.[10]

## V. CONCLUSION

The Court recommends that Defendants' pending Rule 12(b) motions to dismiss be granted in part, and denied in part. The Court finds that Plaintiff has pleaded actionable § 1983 claims against Defendants Benson, Prescott, and LaValley-Wood. Plaintiff has effectively <u>alleged</u> that those three Defendants are violating his First Amendment right to freedom of association, and his Fourteenth Amendment rights to substantive and procedural due process, by establishing and applying a policy that prevents him from having in-person visits with his minor daughter while he is confined at the MSOP. Those Defendants may yet be able to show that the policy at issue advances legitimate institutional objectives at the MSOP, and that the policy is being applied to Plaintiff in a reasonable – not an arbitrary – fashion. However, in the context of the present Rule 12(b) motions, the Court cannot reach that conclusion based on the factual allegations in the complaint alone.

All of the rest of Plaintiff's claims should be dismissed. In particular, the Court

---

[10]  To be clear, the Court has also determined that Plaintiff has not pleaded any <u>separate</u> actionable claims based on the Fifth, Eighth and Ninth Amendments. The Court has found that any claims that might arguably arise from those Amendments are effectively subsumed in Plaintiff's First and Fourteenth Amendment claims.  (<u>See</u> n. 6, <u>supra</u>.)

recommends that all of Plaintiff's claims against Defendants Cal R. Ludeman and Jannine Hebert be dismissed pursuant to Rule 12(b)(6). The Court further recommends that the following specific claims be dismissed: (1) all of Plaintiff's claims for money damages against all Defendants in their official capacities; (2) all of Plaintiff's claims pertaining to the "visiting application forms" referred to in his complaint; and (3) all of Plaintiff's claims based on the Fourteenth Amendment's equal protection clause.

## VI. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Defendants' motion to dismiss, (Docket No. 8), be **GRANTED** as follows:

(a) To the extent that Plaintiff is seeking money damages from any of the named Defendants in his or her official capacity, his claims should be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

(b) All of Plaintiff's claims against Defendants Cal R. Ludeman and Jannine Hebert should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

(c) All of Plaintiff's claims pertaining to the "visiting application forms" policy referred to in his complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

(d) All of Plaintiff's claims based on the equal protection clause of the Fourteenth Amendment to the Constitution should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

2.  Defendants' motion to dismiss, (Docket No. 8), be **DENIED** as to Plaintiff's § 1983 claims against Defendants Dennis Benson, David Prescott, and Ann LaValley-Wood, for alleged violations of his First Amendment right to freedom of association and his Fourteenth Amendment rights to substantive and procedural due process to the extent that they relate to the MSOP policy that prevents in person visits between Plaintiff and his minor daughter.

Dated: January 12, 2011

s/ _____
Leo. I. Brisbois
U.S. MAGISTRATE JUDGE

**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by January 26, 2011**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof.  Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.